1

2

3

4

5          UNITED STATES DISTRICT COURT

6         EASTERN DISTRICT OF WASHINGTON

7   DOUGLAS ALEN OLSON,

8                        Plaintiff,          NO: 2:15-CV-0056-TOR

9        v.                                  ORDER GRANTING DEFENDANT'S
                                             MOTION FOR SUMMARY
10  CAROLYN W. COLVIN, Acting                JUDGMENT
    Commissioner of Social Security
11  Administration,

12                      Defendant.

13

14       BEFORE THE COURT are the parties' cross-motions for summary

15  judgment (ECF Nos. 13, 14).  This matter was submitted for consideration without

16  oral argument.  The Court—having reviewed the administrative record and the

17  parties' completed briefing—is fully informed.  Although a hearing is set for this

18  matter for December 22, 2015, this Court finds no reason to delay its order.  For

19  the reasons discussed below, the Court grants Defendant's motion and denies

20  Plaintiff's motion.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

1    court "may not reverse an ALJ's decision on account of an error that is harmless."

2    *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate

3    nondisability determination."  *Id.* at 1117 (internal quotation marks and citation

4    omitted).  The party appealing the ALJ's decision generally bears the burden of

5    establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

6                    **FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

7           A claimant must satisfy two conditions to be considered "disabled" within

8    the meaning of the Social Security Act.  First, the claimant must be "unable to

9    engage in any substantial gainful activity by reason of any medically determinable

10   physical or mental impairment which can be expected to result in death or which

11   has lasted or can be expected to last for a continuous period of not less than twelve

12   months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Second, the claimant's

13   impairment must be "of such severity that he is not only unable to do his previous

14   work[,] but cannot, considering his age, education, and work experience, engage in

15   any other kind of substantial gainful work which exists in the national economy."

16   42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

17          The Commissioner has established a five-step sequential analysis to

18   determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

19   404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).  At step one, the Commissioner

20   considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i);

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

1    416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

2    Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

3    404.1520(b); 416.920(b).

4         If the claimant is not engaged in substantial gainful activities, the analysis

5    proceeds to step two.  At this step, the Commissioner considers the severity of the

6    claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

7    claimant suffers from "any impairment or combination of impairments which

8    significantly limits [his or her] physical or mental ability to do basic work

9    activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

10   416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

11   however, the Commissioner must find that the claimant is not disabled.  *Id.*

12        At step three, the Commissioner compares the claimant's impairment to

13   several impairments recognized by the Commissioner to be so severe as to

14   preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§

15   404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more

16   severe than one of the enumerated impairments, the Commissioner must find the

17   claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

18        If the severity of the claimant's impairment does meet or exceed the severity

19   of the enumerated impairments, the Commissioner must pause to assess the

20   claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work").  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income, dated September 11, 2011, alleging a disability onset date of March 15, 2009, in his applications. Tr. 158-64, 165-70. These applications were denied initially and upon reconsideration, and Plaintiff requested a hearing. Tr. 113-16, 119-20, 121-22, 123-24. A hearing was held with an Administrative Law Judge ("ALJ") on July 16, 2013. Tr. 33-70. On August 9, 2013, the ALJ rendered a decision denying Plaintiff benefits. Tr. 14-32.

As a threshold issue, the ALJ found that Plaintiff met the insured status requirements of Title II of the Social Security Act through December 31, 2013. Tr. 19. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 15, 2009, the alleged onset date. Tr. 19. At step two, the ALJ found that Plaintiff had the following severe impairments: obstructive sleep apnea, morbid obesity, diabetes mellitus, hypertension status post pacemaker placement,

bronchitis, adjustment disorder, and anti-social personality disorder.  Tr. 19.   At

step three, the ALJ found that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals any listed impairment.

Tr. 20.  The ALJ then determined that Plaintiff has the RFC

> to perform light work, which is defined as lifting and/or carrying up to
> twenty pounds occasionally and ten pounds frequently, standing
> and/or walking up to two hours and sitting up to six hours all within
> an eight hour work day with normal breaks. 20 CFR 404.1567(b) and
> 416.967(b). In addition, the claimant can frequently climb ramps and
> stairs, but he can never climb ladders, ropes, or scaffolds. The
> claimant can also frequently stoop, kneel, crouch, and crawl. He must
> avoid concentrated exposure to vibrations, respiratory irritants, and
> hazards. Finally, the claimant cannot have any interaction with the
> general public and he is limited to occasional and superficial (defined
> as non-collaborative) interaction with co-workers.

Tr. 22.  At step four, the ALJ found that Plaintiff is capable of performing past

relevant work as an electronics worker.  Tr. 26.  Alternatively, at step five, the ALJ

found, considering Plaintiff's age, education, work experience, and RFC, he could

perform the representative occupations of products inspector/checker,

janitor/cleaner, and hand packager.  Tr. 27.  In light of the step four and step five

findings, the ALJ concluded that Plaintiff was not disabled under the Social

Security Act and denied his claims on that basis.  Tr. 28.

     The Appeals Council denied Plaintiff's request for review on January 14,

2015, making the ALJ's decision the Commissioner's final decision for purposes

of judicial review.  Tr. 1-6; 20 C.F.R. §§ 404.981, 416.1484, 422.210.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff raises the following two issues for this Court's review:

> (1) Whether the ALJ properly discounted Plaintiff's symptom claims; and
>
> (2) Whether the ALJ properly weighed the medical opinions of Drs. Mabee and Arnold.

ECF No. 13 at 8-9. This Court addresses each issue in turn.

**DISCUSSION**

**A. Adverse Credibility**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

1    Second, "[i]f the claimant meets the first test and there is no evidence of

2    malingering, the ALJ can only reject the claimant's testimony about the severity of

3    the symptoms if she gives 'specific, clear and convincing reasons' for the

4    rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting

5    *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  "General findings are

6    insufficient; rather, the ALJ must identify what testimony is not credible and what

7    evidence undermines the claimant's complaints."  *Id.* (quoting *Lester v. Chater*, 81

8    F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.

9    2002) ("[T]he ALJ must make a credibility determination with findings sufficiently

10   specific to permit the court to conclude that the ALJ did not arbitrarily discredit

11   claimant's testimony.").

12   In making an adverse credibility determination, the ALJ may consider, *inter*

13   *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

14   claimant's testimony or between his testimony and his conduct; (3) the claimant's

15   daily living activities; (4) the claimant's work record; and (5) testimony from

16   physicians or third parties concerning the nature, severity, and effect of the

17   claimant's condition.  *Thomas*, 278 F.3d at 958-59.

18   Plaintiff faults the ALJ for providing impermissible reasons for rejecting his

19   symptom testimony.  ECF No. 13 at 9-13.  In support, Plaintiff provides the

20   following arguments: (1) Plaintiff's statements regarding past drug use were not

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

really inconsistent, *id.* at 10; (2) the ALJ failed to address Plaintiff's edema and the resulting physical limitations when finding that his testimony was not substantiated by objective medical evidence, *id.* at 10; (3) Plaintiff's daily activities are not inconsistent with his physical symptom claims, *id.* at 10-11; and (4) the ALJ improperly rejected Plaintiff's claims of mental impairment based on lack of treatment, *id.* at 11-12.

This Court finds the ALJ properly conducted an adverse credibility analysis, providing specific, clear, and convincing reasons supported by substantial evidence for not finding all of Plaintiff's symptom claims credible.

### 1. Claims Regarding Physical Impairments

First, the ALJ found the extent of Plaintiff's physical impairments were inconsistent with the longitudinal record, including both treatment notes as well as Plaintiff's own reported activities. Tr. 23-24. The ALJ found that, although Plaintiff alleged his impairments affected his ability to do any physical activity, including lifting, squatting, walking, standing, and bending, the ALJ found the record showed otherwise:

> The claimant's primary alleged limitations stem from his physical impairments. However, it appears from the longitudinal record that the claimant's symptoms are generally well-controlled when he follows the prescribed course of treatment. First, while there is evidence that the claimant has required ongoing treatment for his hypertension, it appears that the pacemaker placement in April 2012 improved his symptoms. In October 2012, the claimant indicated that he was able to tolerate exercise better and that the device was

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

1    functioning normally. His echocardiograms were noted as being
2    within normal limits. Likewise, it was noted that the claimant's
     hypertension was well-controlled with treatment. Additionally, the
3    claimant's diabetes mellitus symptoms also appear to be well-
     controlled when the claimant follows the prescribed treatment as well
4    as when he follows the dietary restrictions.

5    Tr. 23 (internal record citations omitted).    Further, the ALJ found Plaintiff's daily

6    activities "not as limited as one would expect given his allegedly disabling

7    symptoms." Tr. 23. Specifically, the ALJ noted that Plaintiff was able to ride his

8    bike, be independent in self-care, use public transportation, prepare his own meals,

9    and go shopping. Tr. 23 (citing Tr. 317 (treatment notes of Mr. Bomberger, PAC,

10   noting that Plaintiff rides his bicycle daily), Tr. 217-24 (Function Report)). The

11   ALJ concluded that, although Plaintiff is not as physically limited as his claims

12   suggest, "any physical limitations that [Plaintiff] may have from his impairments

13   are addressed through the exertional, postural, and environmental limitations in the

14   residual functional capacity." Tr. 24.

15          Although Plaintiff faults the ALJ for failing to mention Plaintiff's edema,

16   which Plaintiff claimed required him to lie down to elevate his legs, the ALJ did

17   acknowledge Plaintiff's claims regarding edema in his lower extremities.

18   However, citing to the treatment notes of William Bomberger, PAC—the provider

19   Plaintiff primarily cites to in support of his assertion that the ALJ ignored evidence

20   of his edema, ECF No. 13 at 10—the ALJ noted that Plaintiff's edema is likely due

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

1   to his obesity.  Tr. 20 (citing Tr. 357).  This is in line with the ALJ's finding that

2   Plaintiff's limitations are well-controlled with a prescribed course of treatment,

3   including dietary restrictions.

4          While "it is error to reject a claimant's testimony merely because symptoms

5   wax and wane in the course of treatment," an ALJ may rely on examples of

6   "broader development" of improvement when finding a claimant's testimony not

7   credible.  *Garrison*, 759 F.3d 1017-18 ("While ALJs obviously must rely on

8   examples to show why they do not believe that a claimant is credible, the data

9   points they choose must *in fact* constitute examples of a broader development to

10  satisfy the applicable 'clear and convincing' standard.").  Plaintiff fails to show

11  that the ALJ's chosen examples do not demonstrate that Plaintiff's physical

12  condition improved with treatment.  Further, although the ALJ cannot reject a

13  claimant's testimony solely because the objective medical evidence does not

14  support the severity of the alleged impairment, inconsistencies between Plaintiff's

15  alleged limitations and objective medical evidence—in addition to the other

16  reasons addressed below—provide a permissible reason for discounting Plaintiff's

17  credibility.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While

18  subjective pain testimony cannot be rejected on the sole ground that it is not fully

19  corroborated by objective medical evidence, the medical evidence is still a relevant

20  factor in determining the severity of the claimant's pain and its disabling effects.").

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

The Plaintiff also objects to the ALJ's mention of Plaintiff's activities as inconsistent with his physical limitation claims, asserting that he found riding bicycles increasingly difficult, ECF No. 13 at 11 (citing Tr. 363), and that the other listed activities were not inconsistent with his symptom claims.  However, the treatment notes cited by Plaintiff merely indicate that he had difficulty riding bicycles up hills and would feel short of breath.  *See* Tr. 363.  This is not inconsistent with a previous treatment note, cited to by the ALJ, indicating that Plaintiff rides a bicycle daily but becomes short of breath and experiences increased heart rate when traveling uphill or long distances.  *See* Tr. 317.

Moreover, although Plaintiff contends his daily activities are not inconsistent with his claimed physical limitations, Plaintiff alleged his physical limitations affected his ability to do *any* physical activity.  Tr. 24; *see* Tr. 55-57 (testimony of Plaintiff indicating that he lays down "for the most part of the day" because walking, standing, bending over, and sitting all present difficulties).  Accordingly, the ALJ provided another specific, clear, and convincing reason for discrediting Plaintiff's credibility."  *See Molina*, 674 F.3d at 1113 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); *see also Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) ("[O]nly if [a claimant's] level of activity were inconsistent with a

1    claimant's claimed limitations would these activities have any bearing on her

2    credibility." (alterations omitted)).

3            **2. Claims Regarding Mental Impairments**

4            Second, the ALJ found that Plaintiff was not as limited from his mental

5    impairments as alleged.  Tr. 24.  Specifically, the ALJ noted that there was nothing

6    in the record to show Plaintiff had sought any treatment for his allegedly disabling

7    mental symptoms.  Tr. 24.  The ALJ also noted that, throughout the record,

8    Plaintiff had not presented with any psychiatric issues or inability to interact

9    appropriately with his various treatment providers.  Tr. 24 (citing medical records

10   of Family Medicine Spokane and Rockwood Clinic).  Nevertheless, the ALJ noted

11   that any difficulties with social functioning were addressed in the RFC, "which

12   limits him to no interaction with the general public and only occasional and

13   superficial interaction with coworkers."  Tr. 24.

14           Plaintiff faults the ALJ for rejecting his claim of a mental impairment based

15   on a lack of treatment.  ECF No. 13 at 11-12.  Further, Plaintiff asserts that the ALJ

16   has failed to demonstrate how the evidence in the record contradicts Plaintiff's

17   symptom claims, especially considering the findings of Drs. Arnold and Mabee

18   regarding Plaintiff's poor social functioning.  *Id.* at 12.

19           While the failure to seek mental health treatment may not be a legitimate

20   basis to reject a claimant's symptom claims, *see Nguyen v. Chater*, 100 F.3d 1462,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

1465 (9th Cir. 1996), the lack of credible evidence in the record corroborating the extent of mental health limitations can be, *see Molina*, 674 F.3d at 1113-14. Moreover, the ALJ accounted for Plaintiff's mental limitations in the RFC by limiting Plaintiff to no interaction with the general public and only occasional and superficial interaction with coworkers. Tr. 24; *see* Tr. 22. Plaintiff has failed to demonstrate how any error was harmful in light of the ultimate RFC, as is his burden. *See Molina*, 674 F.3d at 1111. Further, in light of the other permissible reasons the ALJ provided for discrediting Plaintiff's testimony, this Court does not find reversible error. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

### 3. Overall Credibility

Finally, the ALJ found that Plaintiff's inconsistent statements regarding drug use eroded his overall credibility. Tr. 24. For instance, Plaintiff testified at the hearing that he had not used any illegal drugs since 2008 or 2009 and had not consumed alcohol in over 20 years. Tr. 24. However, in early July 2010, Plaintiff reported using methamphetamines just three days prior to his appointment and, later that same month, reported that he had used drugs the night before. Tr. 24 (citing Tr. 251, 258). Similarly, in June 2010, a treatment note indicated that

Plaintiff smelled of alcohol and appeared to be under the influence of drugs.  Tr. 24 (citing Tr. 262, which noted a faint smell of ETOH, or ethyl alcohol).  Because the ALJ may employ "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying . . . and other testimony by the claimant that appears less than candid" when assessing the Plaintiff's credibility, the ALJ did not err when she found such contradictory evidence raised questions as to the reliability of Plaintiff's allegations.  *See Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012); *see also Thomas*, 278 F.3d at 959 ("[T]he ALJ found that [the claimant] had not been a reliable historian, presenting conflicting information about her drug and alcohol usage . . . [T]his lack of candor carries over to her description of physical pain." (internal quotation marks omitted)).  Plaintiff's different interpretation of the testimony does not overcome the ALJ's rational interpretation of the evidence. *Batson*, 359 F.3d at 1194.

In sum, despite Plaintiff's arguments to the contrary, the ALJ provided several specific, clear, and convincing reasons for rejecting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163.

## B. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

1    "Where an ALJ does not explicitly reject a medical opinion or set forth

2    specific, legitimate reasons for crediting one medical opinion over another, he

3    errs." *Garrison*, 759 F.3d at 1012. "In other words, an ALJ errs when he rejects a

4    medical opinion or assigns it little weight while doing nothing more than ignoring

5    it, asserting without explanation that another medical opinion is more persuasive,

6    or criticizing it with boilerplate language that fails to offer a substantive basis for

7    his conclusion." *Id.* at 1012-13. That being said, the ALJ is not required to recite

8    any magic words to properly reject a medical opinion. *Magallanes v. Bowen*, 881

9    F.2d 747, 755 (9th Cir. 1989) (holding that the Court may draw reasonable

10   inferences when appropriate). "An ALJ can satisfy the 'substantial evidence'

11   requirement by 'setting out a detailed and thorough summary of the facts and

12   conflicting clinical evidence, stating his interpretation thereof, and making

13   findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715,

14   725 (9th Cir. 1998)).

15        Plaintiff faults the ALJ for improperly rejecting the opinions of examining

16   providers, Drs. Mabee and Arnold. ECF No. 13 at 14-16. Specifically, Plaintiff

17   asserts that the ALJ failed to explain how the findings of these providers were

18   internally inconsistent with their own observations. *Id.*

19        This Court finds the ALJ properly rejected the opinions of Drs. Mabee and

20   Arnold. As their opinions regarding Plaintiff's mental functioning were

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

contradicted by other sources, *see* Tr. 25 (affording significant weight to the findings of Dan Donahue, Ph.D., and Eugene Kester, M.D., who opined Plaintiff would be able to work away from the general public and would do best with work that is not done in close proximity to co-workers), the ALJ need only have provided "specific and legitimate" reasoning for rejecting them. *Bayliss*, 427 F.3d at 1216.

### 1.  Dr. Scott Mabee

First, the ALJ gave Dr. Mabee's opinion "little weight," finding it internally inconsistent. Tr. 25. Dr. Mabee conducted a psychiatric evaluation in August 2011,[1] in which he opined Plaintiff would be capable of understanding and carrying out both simple and moderately detailed instructions, can concentrate for

---

[1] Plaintiff also faults the ALJ for giving 2009 findings by Dr. Mabee "limited weight." ECF No. 13 at 15 (citing Tr. 26). To the extent Plaintiff meant the ALJ's discussion of the opinion of Ms. Kathy Jamieson-Turner, M.S.—Ms. Jamieson-Turner's evaluation report was merely reviewed by Dr. Mabee, *see* Tr. 313—the ALJ similarly found Ms. Jamieson-Turner's opinion regarding Plaintiff's social functioning inconsistent with her observations. Tr. 26 (citing Tr. 307, 312). Moreover, as an opinion of an "other source," the ALJ need only have provided "germane reasons" for rejecting it. *See Molina*, 674 F.3d at 1111.

moderate periods of time, would be able to complete tasks without close

supervision, but should have minimal interactions with others.  Tr. 25 (citing Tr.

300).  The ALJ found these limitations inconsistent with more marked limitations

indicated in another portion of Dr. Mabee's evaluation:

> In contrast to these mild limitations, Mr. Mabee indicated in the
> "check box" portion of the evaluation that the claimant would have
> marked limitations in his ability to communicate and perform
> effectively in a work setting with public contact and in his ability to
> maintain appropriate behavior in a work setting.

Tr. 25 (citing Tr. 300).  Because inconsistencies between a doctor's opinion and

his own reports provide a specific and legitimate reason for rejecting even a

treating doctor's opinion, *see Bayliss*, 427 F.3d at 1216 (finding a discrepancy

between a doctor's opinion and his other recorded observations and opinions

provided a clear and convincing reason for not relying on that doctor's opinion),

the ALJ provided specific and legitimate reasoning for rejecting Dr. Mabee's

opinion.

### 2.  Dr. John Arnold

Second, and similarly, the ALJ gave Dr. Arnold's opinion "little weight,"

also finding it internally inconsistent.  Tr. 26.  Dr. Arnold conducted a psychiatric

evaluation in January 2011, in which he opined Plaintiff would be capable of

understanding and carrying out simple instructions but can only concentrate for

short periods of time, would be able to complete simple tasks without close

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

supervisor, and would work best in positions that have minimal interactions with others. Tr. 26 (citing Tr. 286). The ALJ found these limitations inconsistent with more marked limitations indicated in another portion of Dr. Arnold's evaluation:

> [D]espite these minimal limitations, Dr. Arnold completed the 'check box' portion of the evaluation by indicating that the claimant would have marked limitations in his ability to work with the public and in his ability to maintain appropriate behavior in a work setting. As such, this opinion is given little weight as it is not only internally inconsistent but it is also inconsistent with Dr. Arnold's observations of the claimant, whom he described as having good eye contact, as being appropriately groomed with good hygiene, and as having a euthymic mood and affect.

Tr. 26 (citing Tr. 286). Because inconsistencies between a doctor's opinion and his own reports provide a specific and legitimate reason for rejecting even a treating doctor's opinion, *see Bayliss*, 427 F.3d at 1216 (finding a discrepancy between a doctor's opinion and his other recorded observations and opinions provided a clear and convincing reason for not relying on that doctor's opinion), the ALJ provided specific and legitimate reasoning for rejecting Dr. Arnold's opinion.

In sum, despite Plaintiff's arguments to the contrary, the ALJ provided specific and legitimate reasoning supported by substantial evidence for according the opinions of Drs. Mabee and Arnold only limited weight. *See id.*

///

///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21

1    **IT IS ORDERED:**

2        1.  Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**.

3        2.  Defendant's Motion for Summary Judgment (ECF No. 14) is

4            **GRANTED**.

5        3.  The hearing scheduled December 22, 2015, is **VACATED** as moot.

6        The District Court Executive is directed to file this Order, enter Judgment

7    for Defendant, provide copies to counsel, and **CLOSE** the file.

8        **DATED** November 17, 2015.



THOMAS O. RICE
United States District Judge